UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROCKY McDOWELL,

                        Plaintiff,            05-CV-0216T

            v.                          **DECISION**
                                        **and ORDER**
JO ANNE B. BARNHART,
Commissioner of Social Security

                        Defendant.

_____


## INTRODUCTION

Plaintiff Rocky McDowell ("McDowell" or "Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") payments.[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard his case was erroneous because it was not supported by substantial evidence in the record.

The Commissioner moves for judgment on the pleadings, claiming that the ALJ's decision was supported by substantial evidence. Plaintiff opposes the Commissioner's motion.

_____

[1]This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated April 5, 2007.

## **BACKGROUND**

On April 7, 1983, Plaintiff Rocky McDowell applied for DIB and SSI benefits claiming that he became disabled on June 2, 1979 due to epileptic seizures. McDowell was 25 years-old with a high school education at the time of his application.

The Social Security Administration ("SSA") denied the application through the reconsideration stage and McDowell did not appeal that decision. He then filed another SSI application in May 1991 which was denied, followed by a subsequent application in March 1992 which was approved. McDowell has been receiving SSI payments since March 1992.

On January 23, 2001, pursuant to a settlement agreement in the class action lawsuit Stieberger v. Sullivan, 801 F. Supp. 1079 (S.D.N.Y 1992), the plaintiff's 1983 application was reopened for consideration. In effect, the Stieberger settlement requires an artificial "alleged onset date" for Plaintiff's disability in this case and, therefore, the relevant period of inquiry spans July 1, 1987 through February 28, 1992. SSA Administrative Law Judge ("ALJ") Charles J. Fiorella conducted the reconsideration hearing on October 22, 2002 and determined that Plaintiff was not disabled during the relevant period of inquiry. Plaintiff thereafter appealed the ALJ's decision to the Social Security Appeals Council. His request for review was denied on March 4, 2005. On May 29th of that year Plaintiff filed this action.

## DISCUSSION

### I.   JURISDICTION AND SCOPE OF REVIEW

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is

not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Defendant moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) as well as Rule 12(c) of the Federal Rules of Civil Procedure.  Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).  Because this court determines that the findings of the Commissioner are supported by substantial evidence in the record, judgment on the pleadings is hereby granted for Defendant.

## II.  THE COMMISSIONER'S DECISION TO DENY PLAINTIFF BENEFITS IS SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD.

### A.   Standard for Entitlement to Disability Benefits

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months

..." 42 U.S.C. §§ 423(d)(1)(A) (concerning Old-Age, Survivors', and Disability Insurance ("OASDI")); 42 U.S.C. § 1382c(a)(3)(A) (2004) (concerning SSI payments). An individual will only be considered "under a disability" if his impairment is so severe that he is both unable to do his previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." Id. Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment. 20 C.F.R. § 404.1572(a) (OASDI); 20 C.F.R. § 416.972(a) (SSI). Work may be considered "gainful" if it is the kind of work usually done for pay or profit, whether or not a profit is realized. §§ 404.1572(b) and 416.972(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in his immediate area, whether a specific job vacancy exists for him, or whether he would be hired if he were to apply for work. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). As discussed in section II-B of this Decision, the ALJ's finding that Plaintiff could engage in substantial gainful work is supported by substantial evidence in the record as a whole.

        1.    The SSA's Five-Step Disability Evaluation Process

        When a claimant requests a Social Security disability hearing

before an Administrative Law Judge, SSA regulations require the ALJ

to perform the following five-step sequential evaluation:

    (i)    if the claimant is performing substantial gainful
           work, he is not disabled;

    (ii)   if the claimant is not performing substantial gainful
           work, his impairment(s) must be "severe" before he
           can be found to be disabled;

    (iii)  if the claimant is not performing substantial gainful
           work and has a "severe" impairment (or impairments)
           that has lasted or is expected to last for a
           continuous period of at least twelve months, and his
           impairment (or impairments) meets or medically equals
           a listed impairment contained in Appendix 1, Subpart
           P, Regulation No. 4, the claimant is presumed
           disabled without further inquiry

    (iv)   if the claimant's impairment (or impairments) does
           not prevent him from doing his past relevant work, he
           is not disabled;

    (v)    even if the claimant's impairment or impairments
           prevent him from performing him past relevant work,
           if other work exists in significant numbers in the
           national economy that accommodates his residual
           functional capacity and vocational factors, he is not
           disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v).  The

ALJ in this case performed the required five-step evaluation and

determined: (i) that the plaintiff had not engaged in substantial

gainful employment from July 1, 1987 through February 28, 1992;

(ii) that the plaintiff's condition was considered "severe" under

§§ 404.1520(c) and 416.920(c); (iii) that the plaintiff's seizures

did not meet or medically equal one of the listed impairments in

20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) that Plaintiff had no past relevant work; and (v) that Plaintiff retained residual functional capacity ("RFC") to perform jobs that existed in significant numbers in the national economy.

In step five of the sequential evaluation, the burden of proof shifts to the Commissioner to show that there is other gainful employment in the national economy that the claimant could perform considering the claimant's RFC, age, and past work experience.  20 C.F.R. § 404.1520(f); see Carroll v. Secretary of Health & Human Serv., 705 F.2d 638, 642 (2d Cir. 1983).  Where there exists a combination of exertional and nonexertional limitations, an ALJ must evaluate whether the occupational base for exertional work is eroded by the nonexertional limitations.  SSR 83-14; see also Bapp v. Bowen, 802 F.2d 601 (2d Cir. 1986).  Pursuant to the regulations, the Commissioner is ultimately responsible for determining whether an individual meets the statutory definition of disability.  20 C.F.R. § 404.1527(e)(1).  As discussed in section II-B of this Decision, the ALJ's findings adverse to the plaintiff in steps (iii) and (v) of the evaluation process [that (iii) the plaintiff's condition did not equal a listed impairment, and (v) that significant numbers of jobs existed in this region that the plaintiff could perform] are both supported by substantial evidence in the record as a whole.

### 2.   Impact of Claimant's Non-Compliance with Prescription Medication Regimen

When performing step three of the five-step SSA disability evaluation, epilepsy qualifies as a "listed impairment" only if seizures persist "despite the fact that the individual is following prescribed antiepileptic treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 11.00A, 11.02, 11.03.  As discussed in section II-B of this Decision, substantial evidence supports the ALJ's conclusion that the plaintiff did not comply with his prescribed medication regimen from July 1, 1987 through February 28, 1992.

### 3.  Impact of Claimant's Illicit Drug Abuse

The Social Security Act states, "An individual shall not be considered to be disabled for [the] purposes of this title if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. 423(d)(2)(C).  The relevant inquiry in determining whether substance abuse is a "material contributing factor" is whether an individual would still be disabled if he were to stop using alcohol and/or drugs.  20 C.F.R. §§ 404.1535(b), 416.935(b).  Based upon the evidence discussed in section II-B of this Decision, the ALJ could reasonably conclude that the plaintiff's illicit drug abuse contributed materially to his medication non-compliance and the frequency and severity of his seizures.

<u>    4.  Evaluating Credibility of Claimant Testimony</u>

An ALJ must consider a claimant's subjective complaints of pain and other limitations when making a determination of the claimant's residual functional capacity ("RFC").   20 C.F.R. § 404.1529; SSR 96-7p.  An ALJ is not permitted to find a claimant incredible solely because the severity of his subjective complaints is not supported by objective medical evidence.  <u>Id.</u>  However, the ALJ may evaluate the credibility of a claimant together with the medical findings and other evidence in determining the true extent of the disability alleged by the claimant.  <u>Pietrunti v. Director</u>, 119 F.3d 1035, 1042 (2d Cir. 1997).  As discussed in section II-B of this Decision, the ALJ's determination that the plaintiff's allegations were "not totally credible" is supported by substantial evidence in the record as a whole.

<u>    5.  The Treating Physician Rule</u>

The Commissioner of Social Security has the authority to regulate the nature, extent, and manner of taking and furnishing evidence in order to establish the right to Social Security disability benefits.  42 U.S.C 405(a).  In accordance with this authority, the Social Security Administration has chosen to give evidentiary weight to the opinions of treating physicians in disability cases.  20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (concerning OASDI and SSI payments respectively).

Both of the above regulations outline the "treating physician rule" with the following identical text:

> Generally, we give more weight to opinions from your treating sources ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

Id. These regulations also state that claimants will receive explanations, or "good reasons," for the weight assigned to a treating physician's opinion. Id. The factors that an ALJ must apply when a treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)).

Omission by the ALJ of the "treating physician rule" analysis on the face of his opinion does not, however, always require remand for further proceedings. See Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004). This is particularly the case when the treating physician's opinion is inconsistent with the other substantial evidence in the record, such as the opinions of other medical experts. See Id. In Halloran, the Second Circuit was

displeased with the ALJ, stating, "The ALJ's opinion denying
disability benefits ... does not assist our review or generate much
confidence in the result. [I]t is unclear on the face of the ALJ's
opinion whether the ALJ considered (or even was aware of) the
applicability of the treating physician rule." Id.   Ms. Halloran
had argued that, because the ALJ's decision denying benefits did
not include an analysis of the treating physician's opinion, remand
was required. See id. at 31.  Nevertheless, the Court of Appeals
chose to undertake "a searching review of the record to assure
[that] Halloran [had] received the rule's procedural advantages"
and concluded that "the substance of the treating physician rule
was not traversed."  Id. at 32.  The Court of Appeals therefore
upheld the District Court's affirmance of the ALJ's decision.  Id.
at 33.

It should be noted, however, that the Halloran court put the
Social Security Administration on notice, stating, "we emphasize
that under the regulations, the Commissioner is required to provide
"good reasons" for the weight she gives to the treating source's
opinion.  This requirement greatly assists our review of the
Commissioner's decision and "let[s] claimants understand the
disposition of their cases."" Id. at 32-33 (citing Snell v. Apfel,
177 F.3d 128, 134 (2d Cir. 1999) and quoting Schaal, 134 F.3d at
505).  The Halloran court continued, "We do not hesitate to remand
when the Commissioner has not provided "good reasons" for the

weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." Id.

Therefore, in the instant case, this court recognizes that the Commissioner is required to give "good reasons" when discounting a treating physician's opinion. Once an ALJ declines to give a treating physician's opinion controlling weight, he should then address the §§ 404.1527(d) and 416.927(d) factors. Failure to do so impedes the review process and, in the future, may result in remand. However, this court finds that (i) the ALJ's decision was supported by substantial evidence and (ii) the substance of the treating physician rule was not ignored.

**B.   Discussion of the Evidence**

Plaintiff claims that he became unable to work on June 2, 1979 due to an epileptic seizure disorder (Tr. 146). This claim appears, at first glance, to be supported by the opinions of two treating physicians, Dr. In-Sook Jeong Shin and Dr. Lazarus (Tr. 390-414). A careful reading of these two opinions, however, reveals that neither supports Plaintiff's claim of total disability and that both opinions include inaccurate statements material to the SSA disability determination process.

Dr. Shin treated the plaintiff from October 23, 1990 through at least May 12, 1992, the "last exam date" in his written opinion

(Tr. 290).  He stated that the plaintiff had blackout spells three to four times per month and generalized convulsions twice per month Id.  Dr. Shin also noted that the plaintiff had no physical or mental conditions aside from his seizure disorder (Tr. 391-95). The only work limitation listed was in the "lift and carry" category, where Dr. Shin opined that the plaintiff should only lift up to 20-25 pounds for up to 1/3 of a work day (Tr. 394).  The doctor wrote:

> "Patient should avoid any circumstances where sudden onset of altered consciousness or unconsciousness may hurt himself or others. [He] should not operate any motor vehicle or electric equipment with a sharp edge or blade, should not climb heights or *[illegible]* alone, should not drive at all, should not work near open fire, etc."

(Tr. 395).  Dr. Shin also stated that the plaintiff followed his prescribed treatment regimen and, when asked about alcohol or drug usage, he checked "No" and added, "Patient denies" (Tr. 394).

The ALJ took Dr. Shin's opinion into account when he determined that the plaintiff could perform substantial gainful work (Tr. 14).  Dr. Shin's opinion does not claim total disability but rather restricts the number of jobs that he believed the plaintiff could perform (Tr. 394-95).  Because the ALJ took these restrictions into account in his determination, Dr. Shin's opinion was not discounted and no in-depth "treating physician rule" analysis was required.

In reviewing the opinion of Dr. Lazarus (who was not a neurologist), his records indicate that he treated the plaintiff

from April 5, 1990 through at least June 2, 1992 (Tr. 409). Dr. Lazarus' opinion stated that the plaintiff had one generalized convulsion per week and that this was "despite careful monitoring by myself and his neurologist, Dr. Insook Shin." Id. Dr. Lazarus then added, in all caps, "I STRONGLY RECOMMEND THAT THIS PATIENT RECEIVE SSI - HE IS TOTALLY AND PERMANENTLY DISABLED." Id. The opinion lists no physical or mental conditions other than the plaintiff's seizure disorder and, when asked about medication compliance and substance abuse, Dr. Lazarus stated that the plaintiff was "very compliant" with his medication and "never" used alcohol or drugs (Tr. 412).

The ALJ properly discounted Dr. Lazarus' opinion because it was "inconsistent with the other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Despite Dr. Lazarus' claimed "careful monitoring," the medical evidence and Plaintiff's own testimony show that he was persistently non-compliant with his prescribed medication regimen from July 1, 1987 through February 28, 1992 (Tr. 215, 252, 291-92, 300, 321, 323, 328-29, 331, 339-40, 344, 375). The evidence also documents a long history of crack cocaine, snorted cocaine, and marijuana abuse (Tr. 212, 235, 242, 326, 331, 340, 344, 563, 566). Much of this substance abuse fell squarely within the 1987-1992 period at issue. See Id. The plaintiff furthermore had a habit of overdosing on his prescribed medication before he would use illicit drugs, apparently

because "someone" told him that this would mitigate the impact of his illicit drug abuse upon his seizure disorder (Tr. 211, 213-15, 220, 222).   The Erie County Medical Center's Department of Neurology noted that the plaintiff's high Dilantin blood levels may actually have *caused* his seizures (Tr. 252).

While it may have seemed obvious to the ALJ that Dr. Lazarus' opinion was not entitled to controlling weight, the ALJ was still required by §§ 404.1527(d)(2) and 416.927(d)(2) to give "good reasons" in his decision for discounting the physician's opinion. However, as stated in section II-A-5 of this Decision, the ALJ's failure to delve into the (d)(2) factors does not preclude this court from affirming the ALJ's decision.   This court finds that (i) the ALJ's decision was supported by substantial evidence in the record as a whole, and (ii) the substance of the treating physician rule was not ignored.

The ALJ properly considered the plaintiff's credibility in light of the evidence in the record.   The plaintiff claims that there is no difference in his seizure activity whether or not he takes illicit drugs (Tr. 566, Pl.'s Mem. at 5).   This directly conflicts with his prior statement, "...as I was in rehab, and the more I was off, you know, [the seizures] discontinued." (Tr. 564). The plaintiff also claims that there is no significant difference in his seizure activity whether or not he is compliant with his medication (Pl.'s Mem. at 5).   This directly conflicts with the

statements of Dr. Truax and Dr. Kintoye (Tr. 222-23, 285,  406-07).  Based upon these inconsistencies, the ALJ could reasonably conclude that the plaintiff's allegations regarding his limitations were less than credible.

The plaintiff was 29 to 34 years-old during the period at issue and had no physical or mental conditions, other than his seizure disorder, which would have limited his ability to work. The ALJ concluded that the plaintiff was unable to work on unprotected heights, around moving, heavy, or dangerous machinery, or in any other environment where the plaintiff would have been a danger to himself or others (Tr. 15).  Nevertheless, the ALJ concluded that the plaintiff retained the residual functional capacity to perform a wide variety of non-hazardous jobs and that a finding of "not disabled" was appropriate under 20 C.F.R. Pt. 404, Subpt. P, App. 2 (Tr. 16).  This conclusion in supported by substantial evidence in the record as a whole.

Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion," Metropolitan Stevedore, 521 U.S. at 149 (quoting Consolidated Edison, 305 U.S. at 229).  The fact that the plaintiff was subsequently awarded benefits under a later disability application does not automatically suggest that a prior decision to deny benefits was erroneous.  See Ply v. Massanari, 251 F.3d 777, 778 (8th Cir. 2001) (per curiam) (rejecting assertion that ALJ was bound by previous

findings under "administrative res judicata" because prior findings were based on claimant's disability status *at that time*).

## **CONCLUSION**

This court finds that the Commissioner's decision was made in accordance with the applicable law and was supported by substantial evidence in the record.  Therefore, I hereby grant judgment on the pleadings in favor of the defendant.

ALL OF THE ABOVE IS SO ORDERED.


                            s/Michael A. Telesca
                         MICHAEL A. TELESCA
                    United States District Judge


Dated:     Rochester, New York
           June 15, 2007